1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GABRIELA SOLANO, on behalf of
her herself and those similarly situated,

                                        Plaintiff,

v.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; TAE
D. JOHNSON, Acting Director of U.S.
Immigration and Customs
Enforcement; DAVID MARIN,
Director of Los Angeles Field Office,
U.S. Immigration and Customs
Enforcement; DAVID JENNINGS,
Director of San Francisco Field Office,
U.S. Immigration and Customs
Enforcement.

                                        Defendants.

Case No. 2:21-cv-01576-AB (KSx)

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT [19]**

1.

Before the Court is Defendants U.S. Immigration and Customs Enforcement ("ICE"), Tae D. Johnson, David Marin, and David Jennings' (together with ICE, "Defendants") Motion to Dismiss Plaintiff Gabriela Solano's ("Plaintiff") Complaint. ("Motion" or "Mot.," Dkt. No 19.)  Plaintiff opposed, ("Opp'n," Dkt. No. 24), and Defendants replied, ("Reply," Dkt. No. 28.)  The Court heard oral argument on August 6, 2021 and took the matter under submission.  *See* Dkt. No. 34.  For the reasons stated below, the Court **DENIES** Defendants' Motion.

## I.    BACKGROUND

### a.  Factual Background

The following allegations are taken from Plaintiff's Complaint.  ("Compl.," or "Complaint," Dkt. No. 1.)  The Immigration and Nationality Act ("INA") and its implementing regulations set forth the authority of federal agencies to arrest individuals for alleged violations of the INA.  (Compl. ¶ 18.)  ICE may arrest an individual for civil immigration violations with or without a warrant pursuant to certain conditions.  (*Id.* ¶ 19.)  The INA provides that only "officers" or "employees of the Service" may arrest these individuals.  (*Id.* ¶ 20.)  Private contractors like G4S and its employees are not authorized under the INA to make either warrantless arrests or to make arrests based on warrants.  (*Id.* ¶ 27.)

Since at least 2016, Defendants have routinely and systematically directed and retained employees of G4S to arrest individuals at jails and prisons in California for immigration enforcement purposes and without any ICE immigration officer present. (*Id.* ¶ 28.)  Defendant's "Private Contractor Arrest Policy" is reflected in a contract between ICE and G4S, a variety of documents and forms, and the systematic practice of G4S conducting immigration arrests across many years.  (*Id.* ¶¶ 28–41; 67–81.)

2.

1
2
3
4
5
6
7

On December 30, 2020, Plaintiff was found suitable for release from state prison by the California parole board.  (*Id.* ¶ 95.)  ICE then notified Plaintiff that it intended to detain her for removal proceedings upon her release from state custody.  (*Id.* ¶ 8.)  Plaintiff was in the custody of California Department of Corrections and Rehabilitation ("CDCR") and anticipated that her release date would be on or around March 15, 2020, at which point she faced an imminent threat of arrest pursuant to the Private Contractor Arrest Policy.  (*Id.* ¶¶ 8, 89, 96.)

8

### b.  Procedural Background

9
10
11
12
13
14
15
16

On February 19, 2021 Plaintiff filed a Complaint asserting two claims challenging the Private Contractor Arrest Policy: (1) a claim pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C) for ICE's allegation violation of the INA and its implementing regulations; and (2) a claim pursuant to the *Accardi* doctrine for ICE's alleged failure to follow its own regulations or procedures, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).  (*Id.* ¶¶ 108–19.)  On June 3, 2021, Defendants filed the instant Motion seeking to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).

17

## II.   EVIDENTIARY OBJECTIONS

18
19
20
21
22
23
24
25
26

The parties offer numerous objections to the proffered evidence.  (*See* Dkt. 25, 29, 32.)  It is "often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised."  *Doe v. Starbucks, Inc.*, No. SACV 08-00582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  Accordingly, to the extent any of the objected-to evidence is relied on in this Order, those objections are **OVERRULED**.  Any remaining objections are also **OVERRULED AS MOOT**.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will [only] proceed with any necessary rulings on defendants' evidentiary objections").

27

//

28

3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    LEGAL STANDARD

#### A. Motion to Dismiss: 12(b)(1)

Rule 12(b)(1) authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction.  A Rule 12(b)(1) challenge may be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the court may dismiss a complaint when the allegations of and documents attached to the complaint are insufficient to confer subject-matter jurisdiction.  *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In this context, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).  In contrast, when a court evaluates a factual challenge to jurisdiction, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

#### B. Motion to Dismiss: 12(b)(6)

Rule 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough details to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*
Labels, conclusions, and "a formulaic recitation of the elements of a cause of action
will not do." *Twombly*, 550 U.S. at 555.  When ruling on a Rule 12(b)(6) motion, "a
judge must accept as true all of the factual allegations contained in the complaint."
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to accept as
true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (2009)
(internal quotation marks omitted).

## IV.    DISCUSSION

Defendants move to dismiss all claims pursuant to Rules 12(b)(1) and 12(b)(6).
First, Defendants argue there is no Article III case or controversy because the case is
moot due to ICE's "reaffirmed" policy with respect to private contractors and due to
Plaintiff's lack of standing.  Second, Defendants argue that the matter is
jurisdictionally barred by U.S.C. §§ 1252(g), 1252(a), and 1252(b)(9).  Lastly,
Defendants argue that APA review is not appropriate here because there is no final
agency action and Plaintiff has adequate alternatives.  The Court will address each in
turn.

### a. Article III Case or Controversy
#### i. Mootness

Defendants argue that Plaintiff's claims are moot because on March 24, 2021,
ICE reaffirmed a April 2018 notice which stated that only an immigration officer can
facilitate a custody transfer.  (Mot. at 8.)  Defendant further argues that Plaintiff
herself was arrested by an ICE officer, rather than a private contractor, and thus there
is no longer any basis for the Complaint's prospective request that the Court declare
unlawful her arrest by a private contractor.  (*Id.* at 9.)  Plaintiff first responds that
because the jurisdictional issue and substantive issues are intertwined and material
facts are in dispute, the jurisdictional determination should wait, but even if it were
appropriate to resolve the factual questions now, there are still disputes as to whether

5.

1    the unlawful G4S arrests have ceased and thus dismissal at this stage is premature.

2    (Opp'n at 4.)  The Court agrees with Plaintiff.

3         Defendants' mootness argument presents a factual attack on this Court's

4    jurisdiction.  As stated above, the Court may resolve a factual attack by considering

5    evidence beyond the pleadings without converting the motion into one for summary

6    judgment.  *Safe Air*, 373 F.3d at 1039.  However, the Court may not do so when "the

7    jurisdictional issue and substantive issues are so intertwined that the question of

8    jurisdiction is dependent on the resolution of factual issues going to the merits."

9    *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  In such cases, "[a]

10   court may not resolve genuinely disputed facts" at the motion to dismiss stage.

11   *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Rather, "the

12   jurisdictional determination should await a determination of the relevant facts on

13   either a motion going to the merits or at trial."  *Augustine*, 704 F.2d at 1077.  The

14   Court must resolve the motion by "assum[ing] the truth of the allegations in a

15   complaint . . . unless controverted by undisputed facts in the record."  *Warren v. Fox

16   Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (quoting *Roberts v.

17   Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987)).

18        Here, the determinative jurisdictional facts go directly to the merits.  Whether

19   the Court has subject matter jurisdiction here depends on whether Defendants have

20   ceased the allegedly unlawful conduct.  *See, e.g.*, *Lopez v. Scully*, No. ED CV 18-

21   01274-AB (KKx), 2019 WL 2902696, at *2–3 (C.D. Cal. May 13, 2019) (declining to

22   decide whether case was moot at motion to dismiss stage where the defendant argued

23   it had taken actions that addressed the plaintiff's claims); *Johnson v. Hernandez*, 69 F.

24   Supp. 3d 1030, 1034–35 (E.D. Cal. 2014) (same).  Accordingly, because the

25   jurisdictional issue is dependent upon the resolution of factual issues going to the

26   merits, the Court must assume the truth of the plaintiff's allegations unless

27   controverted by undisputed facts in the record.  *Warren*, 328 F.3d at 1139.

28

6.

1    Defendants argue that the Court can make a jurisdictional determination

2    because there is no dispute over material facts.  First, Defendants argue that there is no

3    dispute that only immigration officials have the authority to make arrests.  (Reply at

4    3.)  Defendants point to their identical April 2018 and March 2021 notices as support

5    which state that only an immigration officer can facilitate a custody transfer.

6    However, Plaintiff argues that these notices did not stop the action and Defendants

7    continue their Private Contractor Arrest Policy and direct G4S to carry out

8    immigration arrests.  (Opp'n at 5.)  Plaintiff points to several declarations of

9    immigrants who claim they were arrested by private contractors despite the notices.

10   *See* Declaration of Israel Fuentes Escobar (Dkt. 24-1); Declaration of Vilath

11   Xayasomloth (Dkt. No. 24-2); Declaration of Adolfo Chavez Flores (Dkt. No. 24-3).

12   Second, Defendants argue that Plaintiff was arrested by an ICE officer, which shows

13   that any Private Contractor Arrest Policy is not in effect.  (Mot. at 2.)  Defendants

14   point to her administrative warrant as support.  However, Plaintiff argues her warrant

15   at the ICE field office in Fresno does not prove she was arrested by an ICE officer

16   because she was incarcerated in Chowchilla.  (Opp'n at 7.)  Thus, there was no proof

17   that she was transferred from Chowchilla to Fresno by an ICE officer.

18       It appears the parties disagree on whether Defendants continue to utilize private

19   contractors for their arrests despite the April 2018 and March 2021 notices.  Each

20   party supports their arguments with declarations beyond the pleadings.  *See*

21   Declaration of Israel Fuentes Escobar (Dkt. 24-1); Declaration of Vilath Xayasomloth

22   (Dkt. No. 24-2); Declaration of Adolfo Chavez Flores (Dkt. No. 24-3); Declaration of

23   Frances Jackson (Dkt. No. 21-1).  Since there are genuine disputes regarding material

24   facts going towards the merits and jurisdiction, the Court must assume the truth of

25   Plaintiff's allegations to determine mootness.

26       The allegations in the Complaint show that ICE employs a Private Contractor

27   Arrest Policy pursuant to which ICE directs private contractors, such as GS4

28

7.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

employees, to conduct immigration arrests.  The Court finds that these allegations are enough to show the case is not moot and thus denial at this stage is premature. Allowing the case to proceed to discovery could confirm or deny the alleged policy's existence and whether Defendants have since ceased implementing the policy.

Accordingly, the Court denies the Motion on mootness grounds.

### ii. Standing

Next, Defendants argue that Plaintiff's injury was too abstract and speculative to give her legal standing.  (Mot. at 11.)  At the time Plaintiff filed her Complaint, she was subject to an immigration detainer but had not yet been transferred to ICE custody.  (Mot. at 12; Compl. ¶ 8.)  Defendants note that the March 2021 notice renders it highly unlikely that private contractor arrests would occur going forward, especially given any such speculation assumes the agency officials would knowingly violate ICE policy.  (Mot. at 12.)  Plaintiff argues that whether she faced arrest by private contractors is inextricably tied to the merits issue of whether Defendants have a policy of directing such arrests and thus, as with mootness, the Court should refrain from dismissing at this stage and allow for further discovery.  (Opp'n at 12).  Next, Plaintiff argues that the allegations in her Complaint show that her arrest upon release was very likely, if not certain, and her arrest by a private contractor was highly likely given the contract between G4S and ICE and the fact that there had been other instances of such arrests.  (Opp'n at 13–14.)  Again, the Court agrees with Plaintiff.

To have Article III standing, a plaintiff must demonstrate that: (1) she has suffered an "injury in fact" that is concrete, particularized, and actual or imminent, (2) the injury is "fairly traceable" to the defendant's conduct, and (3) the injury can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  A risk of future injury is sufficient to establish standing "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal

8.

quotation omitted); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947, 949 (9th Cir. 2002) ("threatened injury" from governmental action sufficient to establish Article III standing "before the potential harm occurs"). Standing is assessed at the time of filing of the complaint. *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000).

As with Defendant's mootness argument, Defendant's attack on standing goes directly to the merits. Whether Plaintiff faced unlawful arrest by private contractors is inextricably tied to the merits issue of whether Defendants have a policy of directing such arrests. Thus, similar to mootness, the Court must resolve the motion by "assum[ing] the truth of the allegations in a complaint . . . unless controverted by undisputed facts in the record." *Warren.*, 328 F.3d at 1139 (9th Cir. 2003).

As stated above, it appears the parties disagree as to the existence of the Private Contractor Arrest Policy and whether Defendant utilized private contractors for their arrests at the time Plaintiff filed her Complaint. Again, each party supports their arguments with declarations beyond the pleadings. *See* Declarations of Jose Ugalde Tovar (Dkt. No. 24-4); Jose Soto Hernandez (Dkt. No. 24-5); Jacobo Aranda Fernandez (Dkt. No. 24-6); Ri Bahaa Jbara (Dkt. No. 24-7); Adan Castillo Merino (Dkt. No. 24-8); Carlos Munoz (Dkt. No. 24-9); Jose Luis Aguilar Carrion (Dkt. No. 24-10); Gabriel Yucute-Camey (Dkt. No. 24-11); Levi Cruz Menjivar (Dkt. No. 24-12); Rachana Duong Dkt. No. 24-13); Kao Nai Saeteurn (Dkt. No. 24-14); Declaration of Frances Jackson (Dkt. No. 21-1). Since there are genuine disputes regarding material facts going towards the merits and standing, the Court must assume the truth of the allegations in the Complaint.

In the Complaint, Plaintiff alleges that at the time of filing, Plaintiff faced a "substantial risk" of an unlawful G4S arrest pursuant to the Private Contractor Arrest Policy. (Compl., ¶ 13; Opp'n at 13.) Plaintiff was in CDCR custody at Central California Women's Facility ("CCWF"), and ICE had informed Plaintiff that it

intended to detain her upon her release from state custody.  ICE has contracted with

G4S to provide armed detention and transportation services for the San Francisco and

Los Angeles Field Offices' Areas of Responsibility from February 1, 2018 through

July 31, 2023, a time period encompassing Plaintiff's expected release from CDCR

custody.  (*See* Compl. ¶¶ 31–33; Opp'n at 13.)  Plaintiff alleges numerous instances—

including instances within the last few months and, specifically, at CCWF—in which

G4S has conducted unlawful immigration arrests.  (Compl. ¶¶ 66, 69, 76, 79–81.)

Taking the above allegations as true, the Court finds that Plaintiff has alleged

enough to show that, at the time of filing, Plaintiff faced a substantial risk that she

would be unlawfully arrested by G4S.  Contrary to Defendant's arguments, Plaintiff

provides far more than a "string of contingencies" and instead alleges a systemic

policy or practice of private contractor arrests.  *See Melendres v. Arpaio*, 695 F.3d

990, 998 (9th Cir. 2012) (finding that the defendants "had a policy and practice of

violating the Plaintiffs' Fourth Amendment rights" sufficient to establish standing

based on risk of future injury).

Accordingly, the Court finds that these allegations are enough to show

Plaintiff's standing and thus, denial at this stage is premature.  The Motion is denied

on standing grounds.

### b.  Jurisdictional Bars

#### i.  8 U.S.C. 1252(g)

Next, Defendants argue that the Complaint is jurisdictionally barred by Section

1252(g) because Plaintiff challenges action taken by Defendants to commence

immigration proceedings against her.  The Court disagrees.

Section 1252(g) is a "narrow" provision that places a jurisdictional bar on

claims "arising from decisions to commence proceedings, adjudicate cases, or execute

removal orders."  *Department of Homeland Security v. Regents of the University of

California*, 140 S.Ct. 1891, 1907 (2020); 8 U.S.C. § 1252(g).  The statute is "directed

against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am. Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (emphasizing the difference between "discretionary judgment[s]" and "'challenge[s]' to statutory framework").

Defendants rely on *Reno* as an example of the Supreme Court barring jurisdiction for a claim challenging *the manner* in which defendants were selected for prosecution. However, *Reno* is distinguishable. There, the plaintiff did challenge the decision to commence proceedings and the Court specified that this "challenge to the Attorney General's decision" fell within 1252(g).

Here, Plaintiff does not challenge the proceedings against her, nor the Attorney General's discretionary authority. Plaintiff solely challenges the way she was arrested, which is part of the deportation process, but is not barred by Section 1252(g). *See United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (allowing a district court jurisdiction for a "purely legal question" that "does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority).

Accordingly, Plaintiff's Complaint is not barred by Section 1252(g). The Motion is denied based on that ground.

### ii. 8 U.S.C. §§ 1252(a) and (b)(9)

Next, Defendants argue that Plaintiff's claims arise from removal-related activity and thus they fall within the jurisdiction channeling provisions of Sections 1252(a)(5) and (b)(9). (Mot. at 17.) Again, the Court disagrees.

All claims that "arise from immigration removal proceedings can only be brought through the petition for review process in the federal courts of appeals. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1038 (9th Cir. 2016). *See* 8 U.S.C. §§ 1252(a)(5),

(b)(9).  However, courts have provided "built-in limits, specifically allowing claims that are independent of or collateral to the removal process[.]'" *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (holding that noncitizens' claims "challenging the legality of detention pursuant to an immigration detainer" to be outside of 1252(b)(9)'s scope").  Though the Supreme Court has not adopted a firm definition of "arising from" immigration removal proceedings, it has maintained jurisdiction in a case challenging his and his class member's detention without bail hearings. *Jennings*, 138 S. Ct. at 840 (2018).  The Supreme Court justified its decision stating: "it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id*. at 841.

Plaintiff's case does not fit into these exceptions laid out by the Supreme Court. Plaintiff does not challenge removal, the decision to be detained, or the process in determining removability.  Plaintiff solely challenges the manner in which she was arrested, which is independent from the decision to remove her.  Accordingly, Plaintiff is not barred by Sections 1252(a)(5), (b)(9).

### c.  12(b)(6): APA Reviewability

Next, Defendant argues that Plaintiff cannot obtain APA review of her claims because Plaintiff does not challenge a final agency action, but actions by individual ICE officers.

Under 5 U.S.C. § 704, a plaintiff must challenge a "final agency action" to obtain APA review.  An agency action is final when it "mark[s] the consummation of the agency's decision-making process" and it is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Courts tend to be more "pragmatic" and "flexible" with the finality element and "focus on the practical and legal effects of the agency

1    action[.]" *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th

2    Cir. 2006)).  Additionally, "[e]ven if final, an agency action is reviewable under the

3    APA only if there are no adequate alternatives to APA review in court."  *U.S. Army*

4    *Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1815 (2016); 5 U.S.C. § 704.

5         First, Defendants challenge the finality of the Private Contractor Arrest Policy

6    and deny its existence.  Defendants argue that this policy is at most a mere "statement

7    of  policy," which cannot be "final" because Plaintiff has not shown it has been

8    applied or implemented.  (Mot. at 22.)  However, Plaintiff's Complaint sets forth

9    detailed allegations supporting the existence of such a policy and its current

10   implementation.  (*See* Compl. ¶¶ 29–37, 63, ¶¶ 66–81.)  For example, Plaintiff alleges

11   that the policy is reflected in the contract between ICE and G4S for the transportation

12   of individuals in ICE custody.  (*Id.*)  Plaintiff alleges that there have been repeated

13   immigration arrests conducted by G4S officers over several years, as contemplated by

14   the contract and other documents.  (*Id.* ¶¶ 66–81.)  Thus, the Court finds that Plaintiff

15   has sufficiently alleged that this policy is not merely an unimplemented "statement of

16   policy."  At this early stage in the proceedings, the Court finds that Plaintiff has

17   sufficiently alleged a "final agency action."

18        Second, Defendants argue that Plaintiff's APA claim fails because she has an

19   adequate alternative remedy and thus cannot obtain APA review.  (Mot. at 23.)

20   However, Defendants have identified no alternative remedy that is adequate.

21   Plaintiffs argue that neither a petition for review, nor a custody review, nor a habeas

22   petition, nor money damages are adequate alternatives because they do not offer the

23   remedy sought here—enjoining on a class-wide basis ICE's alleged Private Contractor

24   Arrest Policy.  (Opp'n at 24.)

25        The Court agrees that a petition for review is inadequate because the relief

26   sought in this action has nothing to with class members' removal proceedings.  A

27   custody review by an immigration judge and a federal habeas petition are likewise

28

inadequate because Plaintiff challenges the *manner* of her arrest, not her immigration detention.  Money damages are not an adequate substitute as Plaintiff seeks injunctive relief.  *See Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 680 (N.D. Cal. 2020) (alternative remedy is inadequate where it does not provide for the injunctive relief sought); *see also Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988) (money judgment was not adequate substitute for prospective relief).

While true that "the alternative remedy need not provide relief identical to relief under APA," *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009), an alternative remedy offering only "doubtful and limited relief" does not displace APA review. *Scholl*, 494 F. Supp. 3d at 681 (quoting *Bowen*, 487 U.S. at 901).  Accordingly, the Court finds that Plaintiff has shown that only the APA affords adequate relief to Plaintiff and potential class members.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **<u>DENIED</u>**.

**IT IS SO ORDERED.**

Dated: September 01, 2021    _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE